UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS


GLENN W. DOWD,
DARLENE M. SALONIA,
      Plaintiffs,


      v.                         CIVIL ACTION NO. 23-10108-MPK[1]


BASS & OYSTER RIVER
MARINER DEVELOPMENT, LLC, and
PAUL BUTLER,
      Defendants.


MEMORANDUM AND ORDER ON DEFENDANTS' MOTION TO DISMISS
FOR LACK OF SUBJECT MATTER JURISDICTION (#41)

KELLEY, U.S.M.J.

I. Introduction.

      Plaintiffs Glenn Dowd and Darlene Salonia bring this civil action against defendants Bass & Oyster River Mariner Development, LLC ("Bass River LLC") and Paul Butler[2] related to defendants' construction of plaintiffs' vacation home in Dennis, Massachusetts. Plaintiffs seek damages from Bass River LLC for breach of contract, verbal agreement, and the implied covenant of good faith and fair dealing and from Bass River LLC and Butler for negligent misrepresentation and under Mass. Gen. Laws ch. 93A. (#1, complaint.)

---

[1] The parties have consented to proceeding before a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (#14.)

[2] Plaintiffs are married. Dowd is an attorney who has been admitted pro hac vice in this court. (#11.)

1

Plaintiffs invoke the court's original jurisdiction over "all civil actions...between...citizens of different States," *see* 28 U.S.C. § 1332(a)(1). (#1 ¶ 6.) The parties conducted jurisdictional discovery and the court held an evidentiary hearing. For the reasons set out below, the court finds that plaintiffs have not met their burden to prove complete diversity and therefore allows #41, defendants' motion to dismiss for lack of subject matter jurisdiction.

II. <u>Procedural History</u>.

Plaintiffs identified themselves in their complaint as residents of Connecticut and Butler, one member of Bass River LLC, and Stephen Lowe, the other member, as residents of Massachusetts. (#1 ¶¶ 2-5.) Bass River LLC and Butler admitted in their answer to being residents of Massachusetts. (#7 ¶¶ 4-5.) Plaintiffs further alleged in their complaint complete diversity of citizenship because plaintiffs are citizens of Connecticut and defendants are citizens of Massachusetts. (#1 ¶ 6.) In their answer, defendants did not respond to this legal conclusion. (#7 ¶ 6.)

Two days before a hearing on plaintiffs' pending motion for prejudgment attachments (#21), the court ordered the parties to file disclosure statements under Fed. R. Civ. P. 7.1(a)(2). (#31.)[3] Plaintiffs filed a disclosure statement identifying themselves as citizens and residents of Connecticut. (#32.) The morning of the hearing, defendants, through counsel, filed a disclosure statement identifying Lowe as a citizen and resident of Massachusetts. (#35 ¶ 2.) However, defendants represented that Butler:

> . . . owns homes in Connecticut, Florida, and Massachusetts. At present, he moves between homes throughout the year because he does business in Connecticut and

---

[3] Fed. R. Civ. P. 7.1(a)(2)(A) provides that "[i]n an action in which jurisdiction is based on diversity under 28 U.S.C. § 1332(a), a party or intervenor must, unless the court orders otherwise, file a disclosure statement" that "must name—and identify the citizenship of—every individual or entity whose citizenship is attributed to that party or intervenor…when the action is filed or removed to federal court…." *Id*.

Massachusetts. As such, he does not reside in any state for more than six months a year. However, he has resided in Connecticut for approximately thirty years, files taxes in Connecticut, and votes in Connecticut. The most recent Annual Report for [Bass River LLC] lists his address as 717 Bloomfield Avenue, Bloomfield, CT 06002. As such, he considers himself a citizen of Connecticut.

(#35 ¶ 1.)

At the hearing, the court did not address the pending motion for prejudgment attachments but, rather, ordered the parties to file a joint status report indicating how they intended to proceed. (#36.) After the submission of the joint status report (#37), the court exercised its discretion to permit limited discovery on the issue of defendants' citizenship. (#38.) After jurisdictional discovery, defendants filed the present motion to dismiss, which plaintiffs opposed. (#42, memorandum of law in support of subject matter jurisdiction; #43, opposition to motion.)

From its review of the parties' competing jurisdictional submissions, the court found that an evidentiary hearing was necessary. (#44.) The evidentiary hearing was held on January 12, 2024, via Zoom. (#56.)[4] Butler was the only witness. The court admitted plaintiffs' proposed exhibits previously docketed as #51, except #51-5, which plaintiffs withdrew. The court admitted defendants' proposed exhibits previously docketed as #55. (#59, transcript, at 8-11.) The parties have submitted supplemental briefing. (#57, defendants'; #58, plaintiffs'; #61, defendants' reply.)[5]

III. Legal Framework.

Diversity subject matter jurisdiction allows federal courts to adjudicate controversies between citizens of different states. U.S. Const. art. III, § 2, cl. 1; *see* 28 U.S.C. § 1332(a)(1); *see*

---

[4] In the interim, the court denied plaintiffs' motion to re-open jurisdictional discovery to take Butler's wife, Mary's, deposition. (#47, motion; #50, e-order.)

[5] In their supplemental briefing, plaintiffs rely on an article that they acknowledge was not admitted or discussed at the evidentiary hearing. (#58 at 5 & n.2.) Defendants object. (#61 at 1 n.1.) The article does not alter the court's ruling.

*also BRT Mgmt. LLC v. Malden Storage LLC*, 68 F.4th 691, 695 (1st Cir. 2023). Under 28 U.S.C. § 1332(a)(1), diversity must be complete, that is, no plaintiff may be a citizen of the same state as any defendant. *BRT Mgmt.*, 68 F.4th at 695. Parties cannot establish federal subject matter jurisdiction merely by agreeing that the basis for jurisdiction has been satisfied. *Id.* at 696.

A person is a citizen of the state in which he is domiciled. *BRT Mgmt.*, 68 F.4th at 695. With exceptions not relevant here, non-corporate legal entities take the citizenship of all their members. *Id.* at 696.

"A person's domicile is the place where he has his true, fixed home and principal establishment, and to which, whenever he is absent, he has the intention of returning." *Rodriguez-Diaz v. Sierra-Martinez*, 853 F.2d 1027, 1029 (1st Cir. 1988) (cleaned up) (citation omitted). "Proving domicile requires two showings: (1) 'physical presence in a place,' and (2) 'the intent to make that place one's home.'" *Aponte-Dávila v. Municipality of Caguas*, 828 F.3d 40, 46 (1st Cir. 2016) (quoting *Valentin v. Hosp. Bella Vista*, 254 F.3d 358, 366 (1st Cir. 2001)).

Residence and domicile are not the same; a person can have multiple residences but not have multiple domiciles.[6] *Aponte-Dávila*, 828 F.3d at 46, 49; *see Bank One, Texas, N.A. v. Montle*, 964 F.2d 48, 53 (1st Cir. 1992). Once a domicile is established, it persists until a new domicile is acquired. *Aponte-Dávila*, 828 F.3d at 46. There is ordinarily a presumption of continuing domicile. *Padilla-Mangual v. Pavía Hosp.*, 516 F.3d 29, 31 (1st Cir. 2008); *see Bank One*, 964 F.2d at 50. A new domicile is acquired through physical presence and an intent to remain. *Bank One*, 964 F.2d

---

[6] Use of the term "resident" in a complaint instead of "citizen" or "domiciliary" does not necessarily preclude diversity jurisdiction. *León v. Municipality of San Juan*, 320 F.3d 69, 71 (1st Cir. 2003); *see BRT Mgmt.*, 68 F.4th at 696 n.8. Yet "[i]t is black-letter law that a federal court has an obligation to inquire sua sponte into its own subject matter jurisdiction." *McCulloch v. Vélez*, 364 F.3d 1, 5 (1st Cir. 2004); *see* Fed. R. Civ. P. 12(h)(3).

at 53; *see Padilla-Mangual*, 516 F.3d at 31-32. A change in domicile can be instantaneous, and the motive for the change is irrelevant. *Bank One*, 964 F.2d at 53. Yet "a mere detached, indefinite and ambulatory future intention to possibly or probably effect a change of domicile is of no real significance in solving the jurisdictional riddle." *Valentin*, 254 F.3d at 367 (cleaned up) (citation omitted).

Factors relevant to the domicile analysis include current residence; voter registration and voting practices; location of personal and real property; location of financial accounts; membership in unions, fraternal organizations, churches, clubs and other associations; place of employment or business; driver's license and other car registration; and payment of taxes. *Aponte-Dávila*, 828 F.3d at 46-47 (quoting *García Pérez v. Santaella*, 364 F.3d 348, 350 (1st Cir. 2004)). No single factor is dispositive, and the analysis focuses not just on the number of contacts but also on their substantive nature. *Id*. at 47.

Voter registration is a weighty factor; however, the First Circuit has expressly declined to recognize a presumption of domicile in the state in which a person is registered to vote. *Bank One*, 964 F.3d at 50 (citing *Lundquist v. Precision Valley Aviation, Inc*., 946 F.2d 8, 12 (1st Cir. 1991) (per curiam)); *see Padilla-Mangual*, 516 F.3d at 32. Place of employment or business is probative of an intent to remain, although courts tend to emphasize domestic and social contacts over business ones. *Bank One*, 964 F.3d at 53.

In this case, citizenship is determined as of January 17, 2023, the date that the complaint was filed in this court (#1). *Connectu LLC v. Zuckerberg*, 522 F.3d 82, 91 (1st Cir. 2008). Subsequent events may bear on the sincerity of an intent to remain but they are not part of the primary analysis. *García Pérez*, 364 F.3d at 350-351.

The party that is seeking to show a change in domicile bears an initial burden of production to rebut the presumption of continuing domicile; if the party meets the initial burden of production, the presumption falls out of the case. The party that is the proponent of subject matter jurisdiction bears the ultimate burden of persuasion, by a preponderance of the evidence. Thus, it is the proponent's burden to prove that, more probably than not, diversity existed on the pertinent date. *See Bank One*, 964 F.3d at 50-51 & n.2 (in which defendant, who was opponent of subject matter jurisdiction, alleged that he changed his domicile: "As [defendant] met his burden of production, we do not give special evidentiary weight to the presumption in favor of continuing domicile when adding up the evidence on [plaintiff's] side of the ledger;" plaintiff, which was proponent, bore ultimate burden of persuasion, by preponderance of evidence); *cf. McCann v. Newman Irrevocable Trust*, 458 F.3d 281, 288-289 (3d Cir. 2006) (in which plaintiff-estate, which was also proponent of subject matter jurisdiction, alleged that decedent changed his domicile, and thus bore initial burden of production and ultimate burden of persuasion); *see also* Fed. R. Evid. 301 ("In a civil case, unless a federal statute or these rules provide otherwise, the party against whom a presumption is directed has the burden of producing evidence to rebut the presumption. But this rule does not shift the burden of persuasion, which remains on the party who had it originally").

IV. Findings.

Plaintiffs do not dispute that Butler, at one point, was a domiciliary of Connecticut. (#59 at 7.) The concession is appropriate. Butler moved from Massachusetts to Connecticut in the early 1990s. Although he has owned, and still owns, residences outside of Connecticut, including in

Massachusetts and Florida,[7] Butler raised his children with Mary in their long-time family home in Connecticut, which they did not sell until the late 2010s. (#59 at 19-20, 22, 56-57.)

The court assumes favorably to plaintiffs that the initial burden of production has been met. As proponents of subject matter jurisdiction, plaintiffs must prove that, more probably than not, diversity existed on January 17, 2023. In deciding whether they have met their ultimate burden of persuasion, the court will not give special evidentiary weight to the presumption of continuing domicile. *See Bank One*, 964 F.2d at 50-51 & n.2.

Plaintiffs invite the court to draw an adverse inference from Butler's non-production of Mary's testimony. (#58 at 7-8.) The court declines. An adverse inference from the non-production of evidence is permissive, not mandatory. *Adelson v. Hananel*, 652 F.3d 75, 87 (1st Cir. 2011); *accord United States v. Ariza-Ibarra*, 651 F.2d 2, 15 (1st Cir. 1981) ("the jury may infer"). The inference is appropriate if a reasonable fact finder could conclude that the evidence in question was unfavorable to the non-producing party. *United States v. Santana-Pérez*, 619 F.3d 117, 124 (1st Cir. 2010). Stated another way, the inference is not appropriate if there is a satisfactory explanation for non-production. *Ariza-Ibarra*, 651 F.2d at 15-16; *see, e.g., Santana-Pérez*, 619 F.3d at 124 ("The government gave a satisfactory explanation for its failure to produce the radar

---

[7] The record is not developed regarding property that Butler owns in North Carolina. (#59 at 65.) Plaintiffs have not suggested that Butler is a domiciliary of that state. In their supplemental briefing, plaintiffs assert that the evidence "overwhelmingly" supports a finding that Butler is now a domiciliary of Massachusetts. (#58 at 9); *see also* #42 at 2.

Two Florida and two Massachusetts residences are worth noting at the outset, as they are mentioned later. Butler owned a residence on Bay Colony Drive in Naples, Florida until 2019. He has owned a residence on Giaveno Circle in Naples, Florida since 2016. He owned a residence on Jessie's Lane in South Yarmouth, Massachusetts until 2022. He has owned a residence on Nons Road in Harwich Port, Massachusetts since 2022. (#51-1 at 3.)

video...").  It is plausible, as Butler claimed,[8] that Mary would not want voluntarily to appear in a court proceeding, albeit a remote one. Moreover, plaintiffs, not defendants, rely on Mary's real estate website profile.[9] And plaintiffs, not defendants, bear the ultimate burden of persuasion. *See N.L.R.B. v. Cornell of California, Inc.*, 577 F.2d 513, 517 (9th Cir. 1978) ("Of course in theory it often can be argued that the adverse inference could be drawn against either party, but, reasoning from the purposes of the inference, it is generally recognized that the inference is drawn against the party with the burden of persuasion on an issue...or against the party who is relying on the statements of the uncalled witness") (citing McCormick on Evidence s 272 (2d ed. 1972)); *see also Boardman v. Nat'l Med. Enter.*, 106 F.3d 840, 844 (8th Cir. 1997) ("Drawing an adverse inference from the failure of a party to put on a key witnesses relevant to some issue is most reasonable when it is the party with the burden of proof on that issue who fails to do so").

Further, non-production and the permissible adverse inference "will not convert evidence otherwise insufficient into a prima facie case." *Layne v. Vinzant*, 657 F.2d 468, 472 (1st Cir. 1981) (citation omitted). Assuming that Mary would testify consistently with the profile that she and Butler "have recently made South Yarmouth their primary home," *see* #51-10 at 2, even a "primary" home is not necessarily a domicile.[10]

---

[8] *See* #59 at 51 ("My testimony is, she doesn't want to be involved in it and she wasn't asked to be here by the Court").

[9] *See* #51-10 at 2 ("Mary and her husband Paul, have been seasonal residents for over 20 years and they have recently made South Yarmouth their primary home!. . ."); *see also* #59 at 52-55 (questioning). "South Yarmouth" places this post in the 2017 to 2022 range, given Butler's testimony regarding the Pleasant Street and Jessie's Lane addresses. (#59 at 22-23.)

[10] Similarly, the court rejects plaintiffs' reliance on Butler's November 7, 2022 email stating that he "live[s]" at the Nons Road address. *See* #51-11 at 2 (email); *see also* #59 at 25 (questioning).

According to plaintiffs, they need only prove that Butler was not a domiciliary of Connecticut on January 17, 2023. (#58 at 9.) Plaintiffs are wrong. In *D.B. Zwirn Special Opportunities Fund, L.P. v. Mehrota*, 661 F.3d 124 (1st Cir. 2011) (per curiam), the First Circuit rejected the plaintiff-LLC's "attempt[] to establish diversity in the negative" on appeal from a judgment in favor of the removing defendant, a citizen of Rhode Island. In response to the First Circuit's order to submit an affidavit of jurisdictional facts, the plaintiff submitted an affidavit stating merely that no members were citizens of Rhode Island. *Id.* at 125. In ordering the submission of a compliant affidavit, the First Circuit relied on *Cameron v. Hodges*, 127 U.S. 322 (1888), wherein the Supreme Court found the allegation by the removing defendant, an Arkansas citizen, that none of the plaintiffs were Arkansas citizens to be insufficient. *Zwirn*, 661 F.3d at 126 ("*Cameron* remains the governing precedent") (quoting *Cameron*, 127 U.S. at 324-325). In *Cameron*, the Supreme Court stated:

> ...The adverse party must be a citizen of some other named State than Arkansas, or an alien.... This court has always been very particular in requiring a distinct statement of the citizenship of the parties, and of the particular State in which it is claimed, in order to sustain the jurisdiction of those courts....

127 U.S. at 324-325.[11]

---

[11] Plaintiffs cite two cases in their supplemental briefing, *see* #58 at 9: *New England Wood Pellet, LLC v. New England Pellet, LLC*, 419 B.R. 133 (D.N.H. 2009) (citing *Pramco LLC ex rel. CFSC Consortium, LLC v. San Juan Bay Marina, Inc.*, 435 F.3d 51 (1st Cir. 2006)), and *Vilaythong v. Sterling Software, Inc.*, 353 F. Supp. 3d 87 (D. Mass. 2018). The court agrees with defendants that plaintiffs misread *Vilaythong*. (#61 at 3-4.) In stating "[b]ecause plaintiff is a citizen of Massachusetts and the defendants are citizens of either Michigan or a foreign state," Judge Gorton was not referring to one set of defendants who could have been either citizens of Michigan or citizens of a foreign state. He was referring to two sets of defendants, i.e., the corporate defendants who were citizens of Michigan and the individual defendant who was a citizen of a foreign state. *Vilaythong*, 353 F. Supp. 3d at 93.

The bankruptcy court's statement in *New England Wood Pellet* that it "also has diversity jurisdiction over that claim, and the entire action, because nothing in the record indicates that any member is a citizen of either Massachusetts or Connecticut...," *see* 419 B.R. at 147, is dicta. It is neither binding nor persuasive.

Regardless, plaintiffs have not proven that, more probably than not, diversity existed on January 17, 2023. In his affidavit submitted in support of the present motion, Butler attested that he "ha[s] been a citizen of Connecticut for approximately thirty years," *see* #41-1 ¶ 1; that he "ha[s] never had any intention of living in Massachusetts or remaining in Massachusetts for an indefinite period of time," *see id.* at ¶ 7; and, that he "hope[s] to live full time in Florida at some time in the future but [is] not able to do so yet," *see id.* ¶ 8. At the evidentiary hearing, Butler explained, among other things, that he presently lives in an apartment in Bloomfield, Connecticut, while he renovates nearby 717 Bloomfield Avenue ("717 Bloomfield"), where he intends to live until he retires. After he retires, Butler will lease 717 Bloomfield to businesses. (#59 at 31-33, 42-43, 38); *see* #51-7 (apartment); #51-6 (717 Bloomfield). Butler testified that he had been living in 717 Bloomfield for a little over a year but due to interior renovations, began living in the apartment, fourteen or fifteen months prior to the evidentiary hearing, i.e., in 2022. (#59 at 59); *see also id.* at 42-43. Prior to January 17, 2023, Butler owned both the apartment and 717 Bloomfield. (#51-1 at 3.)

The court observed Butler as he testified and does not find that he was intentionally misrepresenting information bearing on his domicile. To be sure, he was defensive and occasionally hostile to Attorney Dowd. He also had problems remembering information, particularly dates. But that is not surprising. In addition to the court's observations of Butler, it is a stretch to posit that someone would lie under oath with so little to gain as a matter of substantive legal strategy. A finding that plaintiffs have not met their ultimate burden of persuasion results in dismissal of this federal suit, without prejudice. Attorney Dowd and his wife can still bring a suit in state court.

In their supplemental briefing, plaintiffs highlight putative discrepancies between or within Butler's interrogatory responses, other materials, and his testimony, and argue that the discrepancies prove that he is lying. (#58 at 2-4.) Based on the record and its observations of Butler, the court finds plaintiffs' claims in this regard to be overblown and rejects them.[12]

The court also rejects plaintiffs' argument, *see* #58 at 4-6, that town records[13] refute Butler's testimony that he lived in 717 Bloomfield and that he intends to when the renovations are complete. Butler has invested substantial time and money into renovating the historic home, in which the previous owner lived and an owner before that lived and worked. The court credits his testimony in this regard and has no reason to doubt his explanation of town records when confronted with them. (#59 at 30-33, 36, 39-44, 60-63.)[14]

The court acknowledges that the evidence shows that (1) Butler is not currently registered to vote in Connecticut, *see* #59 at 18-19; *see also* #51-4; (2) he had a Florida driver's license from 2018 to 2021 and registered to vote there in January 2018, *see* #59 at 12, 18-19; *see also* #51-1 at 3, #51-3; (3) he had a Massachusetts driver's license from 2021 to 2023, *see* #59 at 21; *see also* #51-1 at 3, and thus presumably on January 17, 2023; (4) he obtained a new Florida driver's license in March 2023 and his registration to vote there is "Active," *see* #59 at 18-19, 21; *see also* #51-1

---

[12] Arguably the most significant of these putative discrepancies relates to Butler's voting practices. *Contrast* #35 at 1 (disclosure statement: "votes in Connecticut"); #51-1 at 3 (interrogatory response: "has only voted in Connecticut dating back to 1994. Again, to the best of his recollection, he has not voted since 2018"); #59 at 88-89 (evidentiary hearing: "I haven't voted in Florida – the only time I would have might have been in 2018, I really truly do not remember. . ."). It is not surprising that Butler would have problems remembering his voting practices.

[13] *See* #51-2 at 2 (September 29, 2022 "Certificate of Substantial Compliance:" "Office Space"); #51-13 at 2-3 (April 11, 2021 permit: "Bring residential up to code for commercial use. . ."); #51-14 at 2-3 ("2022 – CONVERT TO COMMERCIAL USE," "Office Bldg," "Commercial").

[14] Alleged "stark differences" between 717 Bloomfield and the Jessie's Lane and Nons Road homes, *see* #58 at 4; *see also* #42 at 7-8, do not refute Butler's testimony, either.

at 3; and (5) in June 2023, he applied for a passport using the Giaveno Circle, i.e., a Florida, address, *see* #59 at 23-24.

In this circuit, there is no presumption of domicile in the state in which a person is registered to vote. *Bank One*, 964 F.2d at 50. Moreover, no single factor is dispositive. *Aponte-Dávila*, 828 F.3d at 47. On this record, in its entirety, the court does not find that Butler changed his domicile to Florida in 2018 or at any time before January 17, 2023. The court credits Butler's testimony that he and Mary bought the Bay Colony Drive home planning to retire there, for tax purposes, and that their plan was thwarted by family circumstances and when accountants told them that it was not a realistic one. (#59 at 69-72.) Butler admits that this is still their plan. *Id.* at 23; *see* #41-1 ¶ 8 ("by 2025 or 2026"). But "future intention" is "of no real significance." *Valentin*, 254 F.3d at 367.

Contrary to plaintiffs' claim, *see* #58 at 9, there is not "overwhelming[]" evidence that Butler changed his domicile to Massachusetts some time before January 17, 2023. There is no evidence that Butler is currently registered to vote in Massachusetts. He testified unequivocally that he has not voted here in thirty years. (#59 at 88.) The driver's license is not dispositive. The court has rejected plaintiffs' reliance on Mary's real estate website profile. And, as discussed below, the court affords Butler's continuing business contacts with Connecticut substantial weight. *See*, *e.g.*, *Galva Foundry Co. v. Heiden*, 924 F.2d 729, 730 (7th Cir. 1991) ("There is no question that before 1988 [defendant] was a domiciliary of Illinois. The question is whether the steps he took in 1988 in order to beat Illinois taxes [including obtaining a Florida driver's license, registering to vote in Florida, and listing his Florida address on his federal and Illinois income tax returns] effected a change of domicile. We cannot say that the district judge made a clear error in concluding that they did not. [Plaintiff's] argument that [defendant] had residences in two states

and by his actions chose one of them – Florida – to be his domicile is unacceptable because it makes changing one's domicile too easy. Anyone with residences in two or more states could change domicile continually, by changing his voter registration or his driver's license, in order to take advantage of changes in tax law or to opt in or out of federal diversity jurisdiction").

Plaintiffs argue that Butler's financial and professional contacts with Connecticut should be accorded little weight given his long-standing residency and that online transactions are now the norm and accountants and lawyers practice across state lines. (#58 at 8-9.)[15] But they make no serious attempt to grapple with his business contacts with Connecticut vis-à-vis his business contacts with Massachusetts or Florida. This is presumably because any attempt would be utterly futile. As described by Butler, his business contacts with Florida are virtually non-existent. (#59 at 73.) His business contacts with Massachusetts, while existent, *see id*. at 73-76, pale in comparison to his business contacts with Connecticut. Among other businesses, Butler has owned and operated a medical device company for over twenty years that currently only sells to clients in Connecticut. *Id*. at 76-77. More significantly, while Butler's Cape Cod-based businesses own properties and build homes, docks, piers, sea walls, and floats without much oversight, *see id*. at 74-76, his Bloomfield projects are comparatively greater in scale and demand. Butler credibly testified that pre-complaint, he was heavily involved in the development of several multi-unit apartment buildings there and, further, that he cannot leave Connecticut and remain elsewhere

---

[15] A long-time accountant is in Connecticut. (#51-1 at 6); *see also* #59 at 85. As might be expected from the below discussion of business contacts, there are lawyers in Connecticut and Massachusetts, as well as banks and investment accounts in Connecticut and Massachusetts. One bank is in Florida. (#51-1 at 4-5, 6-7.) There are more lawyers in Connecticut than Massachusetts and more banks and investment accounts in Connecticut than Massachusetts. *Id*.

As might be expected of someone who spends time at multiple homes in multiple states, Butler has medical providers in multiple states. (#51-1 at 7); *see also* #59 at 84. He also has cars registered in multiple states. (#51-1 at 4); *see* #59 at 49-50.

indefinitely until those projects are done, in several years. *Id*. at 81-82 ("from early 2021 up until today, it's been a continuous construction of either a 42-unit building or a 150-unit building"); *id*. at 78-79 (approval of 210-unit building "[a] little over a year ago" and "over the next six months, I'll have three or four meetings a month to get final approval to break ground"). Given their scale and the importance to which Butler apparently assigns them, the court does not weigh his business contacts with Connecticut less than, for instance, his domestic or social contacts with Massachusetts or Florida.[16]

The court has no reason to doubt Butler's testimony that the vast majority of his assets are in Connecticut and that the vast majority of his income is derived from Connecticut. (#59 at 82.) It has no reason to doubt Butler's testimony that, in 2022, he spent more time in Connecticut than Massachusetts or Florida. *See id*. at 83-84; *see also* #51-1 at 5.

In 2021, 2020, and 2019, Butler and Mary filed federal income tax returns listing 717 Bloomfield as their "Home address." (#55-2 at 2, 4, 6); *see* #59 at 87.

---

[16] Regarding Butler's domestic and social contacts, the record is not well developed. Butler testified that he has "moved away" from the Catholic church, *see* #59 at 85; in an interrogatory response, however, he listed two places of worship in the last decade, both in Connecticut, *see* #51-1 at 7.

The interrogatory response regarding fraternal and athletic organizations is not clear and was not clarified at the evidentiary hearing. (#51-1 at 5.) As best the court can tell, Butler is a member of country clubs in Connecticut, Massachusetts, Florida, and North Carolina. *Id*.; *see also* #59 at 86. That adds little to the analysis.

Butler's father passed away in 2018. (#59 at 70-71.) His mother, whom he would visit in Massachusetts, passed away in or around 2022, it seems. *Id*. at 82-83. Butler and Mary have been married for 34 years. *Id*. at 55. It is plausible that they have a close relationship yet separate commitments that require them to spend time apart. *See, e.g.*, *id*. at 52 ("She only sells real estate on Cape Cod. . . . It's a primary residence for her. She spends more time on Cape Cod than I do"). Their children are adults. (#51-1 at 3.)

Last, the court addresses what plaintiffs allege to be a "tangle" of state LLC filings. (#58 at 4.)[17] On April 25, 2022, for Jessie's Lane LLC, Butler presumably meant to list the Jessie's Lane address as the "business address" in his roles as manager and signatory and did list the Jessie's Lane address, as well as 717 Bloomfield, as the "business address" in his role as the person authorized to execute, etc., recorded instruments. (#51-12 at 3.) On January 9, 2023, for Bass River Docks, LLC, Butler listed the Jessie's Lane address as the "business address" in his roles as signatory and person authorized to execute recorded instruments. *Id*. at 6. The Nons Road address may have been listed as the manager's "business address." *Id*. at 5-6. On February 14, 2023, for Bass River Builders LLC, Butler listed the Nons Road address as the "business address" in his roles as manager and person authorized to execute recorded instruments. *Id*. at 9.

A 25 Jerome Avenue, LLC form was filed with the Florida Secretary of State on February 1, 2023. Butler is identified as the registered agent and authorized person. He listed an address in Plantation, Florida in the former role but the Giaveno Circle address in the latter. (#51-12 at 11.)

A "ct.gov" print-out for 25 Jerome Avenue, LLC identifies Butler as the principal and agent. The Giaveno Circle address is listed as the "Principal Business address" and the "Principal Residence address" while 717 Bloomfield is listed as the "Agent Business address," "Agent Mailing address," and "Agent residence address." (#51-12 at 12-13.)

Plaintiffs invoke the First Circuit's decision in *Lundquist*, *supra*, 946 F.2d 8, *see* #42 at 8, which imparts that the court may accord the state LLC filings weight notwithstanding any

---

[17] Regarding the state LLC filings, the court notes that a few of the Massachusetts pages are cut off. *See* #51-12 at 2-3, 5-6, 8-9; *see also* #42-12. There are also obvious mistakes on these filings. One refers to South Yarmouth, Connecticut, instead of Massachusetts; another refers to Jessie's Lane in Springfield, instead of South Yarmouth. *Id*. at 3, 6. When Butler was confronted with the state LLC filings at the evidentiary hearing, he testified, *inter alia*, that he does not hire an attorney to do them. (#59 at 27.) He also testified to his belief as to what he "needed" to list. *Id*. at 26-27.

difference between, e.g., "Principal Residence address" and "domicile" for purposes of subject matter jurisdiction. *Lundquist*, 946 F.2d at 12-13 (neither corporate reports nor governing New Hampshire statutes used word "domicile" but statutes required that at least one director be an "actual resident" of New Hampshire: "Thus, although [plaintiff's] and his wife's representations on these corporate reports cannot be said to have been representations of 'domicile,' they were representations not only of mere residence but of continuous, 'actual' residence")). Alone or in combination with the other documentary and testimonial evidence, the court does not find from the state LLC filings that, more probably than not, diversity existed on January 17, 2023.

In sum, plaintiffs have not met their ultimate burden of persuasion and the court lacks subject matter jurisdiction.

V. Conclusion.

For the reasons set out above, #41, defendants' motion to dismiss, is allowed.


February 2, 2024                                      /s/ M. Page Kelley
                                                     M. Page Kelley
                                                     United States Magistrate Judge